NOT FOR PUBLICATION                                    (Doc. No. 9)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| TRUSTEES OF THE NEW JERSEY B.A.C. HEALTH FUND et al., | : : : |
| Plaintiffs, | : Civil No. 14-2614 (RBK/JS) : |
| v. | : **OPINION** : |
| INFRASTRUCTURE LLC, | : : |
| Defendant. | : : |

**KUGLER**, United States District Judge:

Plaintiffs bring this uncontested Motion for Default Judgment pursuant Fed. R. Civ. P. 55(b)(2) against Defendant. (Doc. No. 9.) This action arises under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and requests monetary damages. For the reasons stated herein, Plaintiffs' Motion will be granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The New Jersey B.A.C. Health Fund, New Jersey BM&P Apprentice Education Fund, Bricklayers & Trowel Trades International Pension Fund, and International Masonry Institute (collectively the "Funds") are employee benefit plans established and maintained under applicable provisions of ERISA and LMRA. (Amended Complaint ("Compl.") ¶¶ 4-9.) The B.A.C Administrative District Council of New Jersey (the "Union") is a labor organization organized and maintained under the same. (Id. ¶ 8.) The Trustees of the various Funds, and Richard Tolson in his representative capacity for the Union (collectively "Plaintiffs") bring this

action on the plans' behalf against Infrastructure LLC ("Defendant"), a for-profit corporation organized under the laws of New Jersey and an employer within the meaning of ERISA and LMRA.  (Id. ¶¶ 1-9.)

Pursuant to a collective bargaining agreement between the parties, Defendant was required to make specified employer contributions to employee benefit plans belonging to Plaintiffs.  (Id. ¶¶ 10-11.)  Defendant was also required to forward specified dues check-offs to Plaintiffs.  (Id. ¶ 11.)  On April 24, 2014, Plaintiffs filed a Complaint alleging that Defendant failed to make these contributions in violation of the collective bargaining agreement and ERISA.  (Doc. No. 1).  Service of the Summons and Complaint was made on Defendant on May 30, 2014.  (Doc. No. 8 ¶ 3.)  Defendant never answered the Complaint.  (Id. ¶ 5.)  Plaintiffs requested Entry of Default against Defendant on September 5, 2014, which the Clerk granted on September 9, 2014.  (Doc. No. 5.)

On September 15, 2014, Plaintiffs amended their Complaint.  (Doc. No. 6.)  Service was made on Defendant on November 3, 2014.  (Doc. No. 8 ¶ 4.)  Again, Defendant did not answer Plaintiffs' Amended Complaint or file any motion addressing Plaintiffs' allegations.  (Id. ¶ 5.)  The time for Defendant to answer or otherwise plead expired without extension and Plaintiffs obtained an Entry of Default from the Clerk on December 1, 2014.  (Doc. No. 8.)

After Defendant failed to respond to Plaintiffs' Amended Complaint and Default was entered in this matter, Plaintiffs filed this Motion for Default Judgment, (Doc. No. 9.), seeking relief in the amount of $2,796.16.  (Mercadante Decl. ¶ 14.)  Plaintiffs affirm that on December 1, 2014, Defendant paid to Plaintiffs the delinquent contributions and dues check-offs required under the collective bargaining agreement.  (Mercadante Decl. ¶ 6.)  However, Plaintiffs claim

that they are entitled to interest on the delinquent contributions, liquidated damages, and attorney's fees and costs under the guiding provisions of ERISA totaling \$2,796.16. (Id. at ¶ 14.)

## II.    DISCUSSION AND ANALYSIS

Rule 55(b)(2) allows the Court, upon a plaintiff's motion, to enter default judgment against a defendant that has failed to plead or otherwise defend a claim for affirmative relief. While the decision to enter default judgment is left principally to the discretion of the district court, there is a well-established preference in this Circuit that cases be decided on the merits rather than by default whenever practicable. Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir. 1984). Consequently, the Court must address a number of issues before deciding whether a default judgment is warranted in the instant case. If it finds default judgment to be appropriate, the Court's next step is to determine a proper award of damages.

### A.    Appropriateness of Default Judgment

#### 1.    The Court's Jurisdiction

First, the Court must determine whether it has both subject matter jurisdiction over Plaintiffs' cause of action and personal jurisdiction over Defendant. U.S. Life Ins. Co. in City of New York v. Romash, Civ. No. 09-3510, 2010 WL 2400163, at *1 (D.N.J. June 9, 2010). Verifying the Court's jurisdiction is of particular concern where, as here, the defaulting party has failed to make any sort of appearance or submit any responsive communication to the Court.

In this case, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim arises under the "federal common law of ERISA." Ne. Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 159 (3d Cir. 1985). Moreover, the Court's jurisdiction is expressly authorized by the ERISA statute itself. 29 U.S.C. §§ 1132(e)(1)–(f).

3

In addition, the Court must consider whether it may exercise personal jurisdiction over Defendant. Here, personal jurisdiction exists over Defendant because, among other reasons, it was physically located in the state of New Jersey at the time it was served with process in this matter. See Fed. R. Civ. P. 4(k)(1)(A); (see also Doc. No. 7.)

### 2.    Entry of Default

Second, the Court must ensure that the entry of default under Rule 55(a) was proper. Rule 55(a) directs the Clerk of Court to enter a party's default when that party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." In this case, Defendant was properly served with the original Complaint and Summons on May 30, 2014. (Doc. Nos. 1-3.) Defendant failed to respond to the original Complaint within twenty-one days of service as required under Rule 12(a). Thereafter, Plaintiffs amended their Complaint on September 15, 2014. (Doc. No. 6.) Though Defendant was properly served with the Amended Complaint and Summons on November 3, 2014, Defendant again failed to respond to the Amended Complaint within twenty-one days of service as required under Rule 12(a). Plaintiffs attested to these facts in a declaration attached to their request for default. (Doc. No. 8.) Accordingly, the Clerk's entry of default under Rule 55(a) was appropriate.

### 3.    Plaintiff's Causes of Action

Third, the Court must determine whether Plaintiffs' Amended Complaint states a proper cause of action against Defendant. In conducting this inquiry, the Court accepts as true Plaintiffs' well-pleaded factual allegations while disregarding their mere legal conclusions. See Directv, Inc. v. Asher, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)).

4

Section 515 of ERISA provides that "[e]very employer who is obligated to make

contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement

shall . . . make such contributions in accordance with the terms and conditions of . . . such

agreement." 29 U.S.C. § 1145. If an employer fails to make contributions as required by a

collective bargaining agreement, the Court may award the plan the following relief:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant and
> (E) such other legal or equitable relief as the court deems appropriate
>
> For purposes of this paragraph, interest in unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 or Title 26.

29 U.S.C. § 1132.

Here, Plaintiffs attest that Defendant failed to make $3,085.56 in contributions contrary

to their collective bargaining agreement. (Compl. ¶15.) This constitutes a violation of 29 U.S.C.

§ 1145. Though Plaintiffs affirm that Defendant eventually paid the unpaid contributions,

Plaintiffs allege they are also entitled to interest on the unpaid contributions, liquidated damages,

and reasonable attorney's fees and costs. Based on the relief ERISA authorizes, the Court finds

that Plaintiffs have properly stated a claim for interest on Defendant's unpaid contributions,

liquidated damages,[1] and reasonable attorney's fees and costs in connection with this matter. The Court discusses the proper award of these damages at Part II.B infra.

### 4. Emcasco Factors

Fourth, and lastly, the Court must consider the so-called Emcasco factors when determining whether to enter default judgment. The Court considers: (1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default. Bridges Fin. Grp., Inc. v. Beech Hill Co., Inc., Civ. No. 09-2686, 2011 WL 1485435, at *3 (D.N.J. Apr. 18, 2011) (citing Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)).

In this case, all three of these factors weigh in favor of granting a default judgment. First, there is no indication that Defendant has a cognizable defense to Plaintiffs' allegations. See Hill v. Williamsport Police Dept., 69 Fed. App'x 49, 52 (3d Cir. 2003) ("Because the defendants had not yet filed an answer, the District Court was unable to evaluate whether they had a litigable defense, [rendering this first] factor . . . inconclusive."). Second, because Defendant has wholly failed to answer the Amended Complaint or otherwise appear, Plaintiffs suffer prejudice if it does not receive a default judgment because Plaintiffs have no alternative means of vindicating the claim against the defaulting party. See Directv, 2006 WL 680533, at *2. Third, the Defendant's failure to respond permits the Court to draw an inference of culpability on its part. See Surdi v. Prudential Ins. Co. of Am., Civ. No. 08-225, 2008 WL 4280081, at *2 (D.N.J. Sept. 8, 2008). Therefore, the Emcasco factors weigh in favor of entering default judgment.

---

[1] In accordance with Part II.B.2 infra, liquidated damages are appropriate pursuant to 29 U.S.C. § 1132 because the amount of liquidated damages, calculated by the parties' collective terms, exceeds the calculation of unpaid interest based on the same.

6

5.    Conclusion

In light of the foregoing analysis, the Court finds that Plaintiffs are entitled to a default judgment against Defendant. Therefore, the Court will proceed to its second step and assess the proper award of damages.

**B.    Damages**

Although a plaintiff's allegations pertaining to the amount of damages sought are not treated as true upon the entry of a default judgment, Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), if the damages are for a "sum certain or for a sum which can by computation be made certain, a further evidentiary inquiry is not necessary and a district court may enter final judgment." Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Moskowitz Motor Transp., Inc., Civ. No. 05-5605, 2007 WL 608436, at *3 (D.N.J. Feb. 23, 2007) (citing Fed. R. Civ. P. 55(b)(1)). "A claim for damages is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default. Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." Id. (internal quotation marks and citation omitted).

Here, Plaintiffs seek a total award of $2,796.16, comprised of the sum of interest on Defendant's unpaid contributions, liquidated damages, and attorney's fees and costs. (Mercadante Decl. ¶ 14.) ERISA instructs that interest on unpaid contributions be calculated by the rate set forth in the parties' agreement. 29 U.S.C.A. § 1132. Plaintiffs' and Defendant's agreement also sets forth the rate for calculating liquidated damages and further stipulates to payment of attorney's fees and costs in the event of litigation. (Ex. C to Mercadante Decl. ("Collection Policy").) Moreover, Defendant agreed to be bound by the terms of the agreement. (Ex. A to Mercadante Decl.) Based on these collectively bargained terms, the amount of

7

damages are certain and ascertainable by the Court. Therefore, final judgment will be entered without need for further submissions from Plaintiffs.

### 1.    Interest on Delinquent Contributions

Plaintiffs state that Defendant was delinquent with respect to $3,085.56 in required contributions and failed to remit $212.76 in dues check-offs.[2] (Mercadante Decl. ¶ 5.) According to the parties' agreed upon collection policy, these contributions were due by "the fifteenth (15) calendar day following the end of each calendar month." (Collection Policy at 3.) The policy further provides that Defendant shall be liable for delinquent contributions with interest "at a rate of ten percent (10%) per annum (calculated from the Due Date)." (Id. at 4.)

Calculating interest in the present matter at a rate of ten percent per annum on the corpus of $3,085.56, Defendant owes to Plaintiff $0.85 per day. Moreover, Plaintiffs attest that Defendant was delinquent with required payments by 289 days. (Mercadante Decl. ¶ 11.) With interest in the amount of $0.85 per day, multiplied by Defendant's 289-day delinquency, the Court finds that Defendant owes Plaintiffs $245.65 in interest pursuant to the parties' bargained terms.

### 2.    Liquidated Damages

Furthermore, ERISA allows a plaintiff to recover an amount equal to the greater of liquidated damages calculated based upon the parties agreement or interest on unpaid contributions based on the same. 29 U.S.C. § 1132(g)(2)(C). As mentioned, Defendants are responsible to Plaintiffs for $245.65 in interest based upon the rate set forth in the parties' plan.

---

[2] While Plaintiffs' Amended Complaint includes a claim for relief as to the $212.76 in dues check-offs, Plaintiffs do not ask for any additional interest regarding this sum, but simply that the $212.76 owed by Defendant be remitted. (Compl. ¶ 20-21.) Moreover, Plaintiffs do not ask for anything more regarding the dues check-offs in the declarations supporting their motion for Default, and indeed note that the Defendant paid the $212.76 on December 1, 2014. (See Mercadante Decl. ¶¶ 6, 14.) Since Plaintiffs aver that Defendant paid the required check-offs and seek no further damages as to this sum, the Court finds this claim for relief satisfied and not applicable in the ensuing damages analysis.

This same plan indicates that liquidated damages are to be calculated at a rate of "twenty percent (20%) of the amount of delinquent Contributions." (Collection Policy at 4.) Defendant was delinquent with respect to $3,085.56 in required contributions. (Compl. ¶ 15.) Twenty percent of this cost is $617.11. Because it exceeds the amount of interest calculated on Defendant's delinquent contributions, the Court finds that Defendant owes Plaintiff $617.11 in liquidated damages.

### 3.    Attorney's Fees and Costs

ERISA also allows a plaintiff to recover "reasonable attorney's fees and costs" from a defendant. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs claim that Defendant is responsible for $1,932.55 in attorney's fees and costs spent litigating this matter. While ERISA authorizes the Court to award these fees, it must first assess whether this amount is in fact reasonable.

"[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The product of this calculation is called the lodestar, id., which is assumed to yield a reasonable fee. Washington v. Philadelphia Cnty. Ct. Com. Pl., 89 F.3d 1031, 1035 (3d Cir. 1996) (citing City of Burlington v. Dague, 505 U.S. 557 (1992)). The party seeking attorneys' fees may establish reasonableness by submitting affidavits setting forth hours worked and its claimed rates. See Apple Corps. Ltd. v. Int'l Collectors Soc. 25 F. Supp. 2d 480, 485 (D.N.J. 1998). The burden then shifts to the party opposing the attorneys' fees request to contest either the reasonableness of the hours or the rates claimed. Id. If the opposing party has met this burden, "the court has wide discretion" to determine whether the number of hours reported are reasonable, id., and whether the claimed rates are in accordance with prevailing market rates in the relevant community. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)).

### i. Reasonableness of the Total Hours Worked

As discussed, a request for attorneys' fees must be accompanied by evidence supporting the number of hours worked. Thus, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Eckerhart, 461 U.S. at 433. Further, "hours are not reasonably reported if they are excessive, redundant, or otherwise unnecessary." Rode, 892 F.2d at 1183 (citing Eckerhart, 461 U.S. at 433).

Here, the Declaration of Michael Bauman sets forth the summary of services rendered and hours billed while working on the present matter. (See Bauman Decl.) Attached to Mr. Bauman's Declaration is an Exhibit of the actual billing breakdown. (See Ex. A to Bauman Decl.) The Declaration and its accompanying breakdown indicate that fees and costs sought by Plaintiffs all relate to time spent by attorneys and paralegals pursuing the claims in this matter. (See id.) The total time spent on this matter equals 11 hours. (Id.) The Court finds that the documentation is sufficient to support a finding that the 11 hours listed were reasonably spent on germane issues in this litigation and are not excessive.

### ii. Reasonableness of the Hourly Rate

In keeping with the assessment of reasonable attorney's fees in this case, the "starting point in determining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive." Pub. Interest Research Grp. of N.J. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. See, e.g., Stenson, 465 U.S. at 895-96 n.11; Smith v. Phila. Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997); Washington, 89 F.3d at 1035; Rode, 892 F.2d at 1183.

10

The fee applicant's burden may be satisfied by the submission of affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community. See Washington, 89 F.3d at 1036. The burden then shifts to the party opposing the fee application to produce affidavits or other submissions that create an issue as to the reasonableness of the requested hourly rate. See id. If the fee applicant fails to meet its initial burden, or if the opposing party challenges the fee applicant's proffer, the determination of the appropriate market rate is vested within the court's discretion. See Rode, 892 F.2d at 1183; see also Washington, 89 F.3d at 1036. The Court must assess the experience, skill and reputation of the attorneys and compare their rates to the rates in the relevant market for similar services by attorneys of comparable experience, skill and reputation. See Rode, 892 F.2d at 1183 (citations omitted).

Here, Plaintiffs failed to submit an affidavit detailing the rates customarily charged by attorneys and paralegals at Manhattan firms. By failing to plead or otherwise defend in this action, Defendant has also failed to provide the Court with any evidence that the attorney's fees charged to Plaintiffs are unreasonable. As neither party provided this Court with materials helpful to the resolution of this issue, it is within the Court's discretion to determine the appropriate market rate.

In determining appropriate rates, courts often look to years of experience and geographic location. See U.S. ex rel. Simring v. Univ. Physician Assocs., Civ. No. 04-3530, 2012 WL 10033888, at *7 (D.N.J. Oct. 2, 2012) (finding that a requested $450 hourly rate for an attorney practicing in Montclair, New Jersey with over 30 years of experience was reasonable); Port Drivers Federation 18, Inc., v. All Saints Civ. No. 09-868, 2011 WL 3610100, at *4 (finding that a rate of $475 was a reasonable hourly rate for a partner practicing in Newark); Taaffe v.

11

Life Ins. Co. of N. Am., 769 F. Supp. 2d 530, 543 (S.D.N.Y. 2011) (finding fees of $560 per hour for a partner, $340 per hour for an associate, and $180 per hour for paralegals reasonable in an ERISA case handled by a New York City firm); Barnes v. Am. Int'l Life Assur. Co. of New York, Civ. No. 08-06222, 2010 WL 1253742, at *3 (S.D.N.Y. Mar. 16, 2010) (finding reasonable an hourly rate of $495 for attorney based in Hackensack, New Jersey with focus on ERISA for "the better part of 20 years," as well as $95 per hour for paralegals).

Here, both senior attorneys and paralegals worked on the case for a total of 11 hours. (Bauman Decl. ¶ 5.)  For this work, the senior attorneys billed at a rate of $260 per hour and the paralegals at $90 per hour.  (Id.)  Based on the 11 hours billed for this matter between the senior attorneys and paralegals, the blended sum charged to Plaintiffs and now requested as relief from Defendant is $1,109 in attorney's fees and $823.55 in costs, totaling $1,932.55.

Plaintiffs' attorney's office is located in New York City– which is approximately 14 miles from Newark, and 22 miles from Hackensack.[3]  Given that Plaintiffs' attorneys and paralegals billed at a rate less than similar attorneys in Newark, Hackensack, and New York City, the Court finds that rates of $260 per hour for an attorney with twenty years of experience, and $90 per hour for paralegals, are not unreasonable.  Therefore, $1,109 is payable to Plaintiffs in attorneys' fees and $823.55 is payable to Plaintiffs in costs, totaling $1,932.55.

---

[3] A court may take judicial notice of geographic distances.  See Mondaca-Vega v. Holder, 718 F.3d 1075, 1085 (9th Cir. 2013).  The distance calculated supra was calculated using Google Maps (www.google.com/maps), which is a common practice.  See, e.g., Hartford Life Ins. Co. v. Rosenfeld, Civ. No. 05-5542, 2007 WL 2226014, at *8 n.5 (D.N.J. Aug. 1, 2007).

## III.   CONCLUSION

For the reasons stated above, the Court will grant Plaintiff's Motion for Default

Judgment. Plaintiffs are entitled to a Final Judgment in the amount of $2,796.16, consisting of:

1) interest in the amount of $246.50; 2) liquidated damages in the amount of $617.11; and 3)

attorneys' fees and costs in the amount of $1,932.55.  An appropriate Order shall issue.

Dated: 6-29-2015

ROBERT B. KUGLER
United States District Judge